(No. 2293.    March 19, 1920.)

## STATE v. WOODMAN.

### SYLLABUS BY THE COURT.

Where there is no substantial evidence of the corpus delicti in a homicide case, the verdict finding defendant guilty of second degree murder will be set aside on appeal.

Appeal from District Court, Otero County; E. L. Medler, Judge.

I. N. Woodman was convicted of murder in the second degree, a new trial was denied, and he appeals. Reversed and remanded, with directions.

A. B. RENEHAN, of Santa Fe, for appellant.

N. D. MEYER, Asst. Atty. Gen., for the State.

OPINION OF THE COURT.

ROBERTS, J. The appellant was placed on trial in the district court of Otero county under an indictment charging him with murder in the first degree, it being alleged that he had killed one Martin V. Williams. The petit jury returned a verdict of guilty of murder in the second degree. A motion was interposed for a new trial and overruled, and sentence pronounced, from which this appeal is prosecuted.

The principal point relied upon for a reversal is that the corpus delicti was not proven. The most favorable view of the evidence possible is set forth by the Attorney General in the brief filed on behalf of the state. We copy from the same as follows:

"About the 1st of September of 1915, Martin V. Williams, who had been working for H. H. Riffle, left the place of the latter at Kearney's Switch, about five or six miles from Alamogordo. Within a short time after this date he also worked for Andy Taylor, and on September 11th he went to Alamogordo and stopped with a Mrs. Ruby Roland, with whom he had roomed off and on for about two years. The next day, Sunday, September 12, 1915, Williams left Mrs. Roland's place, and said he was going to Zillah, Wash., but before leaving for Washington he said he was going to Tularosa to see Dr. Woodman. Before leaving Mrs. Roland's place she gave him a pair of cuff buttons which used to belong to her deceased husband. He was wearing these cuff buttons when he left her place. Mrs. Roland also testified that he was dressed in a dark suit and a light shirt, with a black and blue stripe in it, tan shoes and a wide-brimmed hat and a very dark tie. The tie and shirt were purchased for Mr. Williams by Mrs. Roland at the Prince store. In the afternoon of the same day, Dr. Woodman was seen in Tularosa driving in the direction of the white sands, and with him was another man, who was taken to be Williams, and later in the afternoon Dr. Woodman, accompanied by a man, was seen to drive by the Twin Lakes, which are about a mile from the white sands.

"About the 1st of September, 1916, Mr. Pace, then deputy sheriff at Tularosa, received information that something had taken place in the vicinity of the white sands. After a search of three days, he found a human body in a cramped position buried very shallow at said place. After an inquest and an investigation a warrant was issued for Dr. Woodman. Part of the collar of the shirt and necktie and the cuff buttons were also dug up at the place where the skeleton was found. These cuff buttons, shirt, and tie were exactly like those which Mr. Williams wore when he left Mrs. Roland's. The skull which was found had a resemblance to Mr. Williams in general appearance, as well as in the chin and teeth. Before Williams left Riffle's place, Riffle said to Williams that he wanted to pay him what he owed him, and Williams replied that he could have until Christmas, or two of them, to pay him. Shortly after this, and after Dr. Woodman was seen close to the white sands, on September 12, 1915, Dr. Woodman told Riffle that Williams had sold him the account, and that he could have as much time as he wanted to pay it in."

The attorney general says that the evidence shows that Dr. Woodman was seen in Tularosa, driving in the direction of the white sands, and with him was another man, who was taken to be Williams, the deceased. This evidence only went to this: A witness testified that in the afternoon of the day in question, he saw Dr. Woodman driving toward the depot in Tularosa with a man in the buggy with him whom the witness took to be Martin V. Williams. The district attorney then elicited from the witness the information that he was also going in the direction of the white sands. The white sands are located some distance out from Tularosa, and is a very fine, powdered, white alkalied sand that is drifted by the wind into miniature mountains, valleys, and plains, shifting with the wind, and covering thousands of acres.

In Wharton on Homicide, § 587, the author says:

"The corpus delicti, in homicide, consists of the criminal act and the resulting death, and the agency of the accused in its commission."

If we measure the evidence in the case at bar with this rule, it will be seen that it falls far short of affording substantial evidence of the corpus delicti. In the first

place there is but little, if any, evidence of the fact that Martin V. Williams was dead. It was claimed on behalf of the state that a year or so before the remains of the alleged deceased were found by the deputy sheriff that the deceased had been in some manner killed by appellant. Pace, the deputy sheriff, testified that after digging in the sand three days he came upon a skeleton; that he took it to Tularosa and interred it in the graveyard at that place. He produced a skull before the jury. There was no evidence as to whether the skeleton was that of a male or female; whether it corresponded in height to that of Martin V. Williams. It is true two or three witnesses testified that after looking at the skull it looked like the skull of Martin V. Williams, but how they were able to determine this fact does not appear. There is no evidence showing that Williams came to his death by criminal agency. The only circumstances testified to by any witness which it might be claimed tended to show some connection on the part of the appellant with the alleged killing of Martin V. Williams was the following:

One witness testified that he saw Dr. Woodman, the appellant, and Martin V. Williams, the deceased, sitting on the porch of the hotel in Tularosa on Sunday, the 12th of September, 1915, this being the date when the supposed murder took place; and the evidence above quoted, to the effect that the witness had seen Dr. Woodman and a man he supposed to be Williams driving toward the railroad depot, which was also in the direction of the white sands, and the evidence of two other witnesses that near dusk of the same day they saw appellant on the public highway near the white sands in a buggy and some man in the buggy with him. The man with appellant was not described, and was not identified by the state; and then the further fact that appellant told Riffle that he had purchased from Williams the account of some $45 or $50 which Riffle owed Williams. The evidence does not show that appellant did not purchase this account. No motive whatever is shown for the supposed murder.

From the above it will be seen that there is no substantial evidence upholding the verdict of the jury. For this reason the cause is reversed and remanded to the district court of Otero county, with directions to award appellant a new trial; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.